11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Bobby Ray Crain

Appellant

Vs.                   Nos.
11-02-00135-CR, 11-02-00136-CR, 11-02-00137-CR, & 11-02-00138-CR -- Appeals
from Dallas County

State of Texas

Appellee

 

The jury
convicted Bobby Ray Crain of the following offenses:  indecency with a child in Cause Nos. 11-02-00135-CR and
11-02-00136-CR; aggravated sexual assault of a child under the age of 14 in
Cause No. 11-02-00137-CR; and sexual assault of a child in Cause No.
11-02-00138-CR.  For the aggravated
sexual assault conviction, the jury assessed appellant=s punishment at confinement for 25
years.  For the other three convictions,
the jury assessed his punishment at confinement for 5 years.  The punishments are to run concurrently.  Appellant appeals his convictions.  We affirm. 









In his
sole point of error in each case, appellant argues that the evidence was
factually insufficient to prove his guilt. 
Specifically, appellant refers to the lack of physical evidence and the
weaknesses and inconsistencies in the State=s evidence.  In order to
determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak as to render the conviction clearly wrong and manifestly unjust or
whether the evidence supporting guilt, although adequate when taken alone, is
so greatly outweighed by the overwhelming weight of contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  We note also that the jury, as the trier of
fact, was the sole judge of the credibility of the witnesses and of the weight
to be given to their testimony.  TEX.
CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 & 1981).  

The record
shows that appellant was charged and convicted of indecency with a child for
engaging in sexual contact with his daughter, K.W., and his daughter=s half-sister, T.W. (whom he also raised), by
touching their breasts with his hands. 
Appellant was also charged and convicted of the aggravated sexual
assault of T.W. by penetrating her sexual organ with his sexual organ when she
was under the age of 14.  Finally,
appellant was charged and convicted of the sexual assault of T.W. by
penetrating her mouth with his sexual organ. 


At the
time of the trial, K.W. was 12 years old and T.W. was 16 years old.  K.W. testified that she went to visit
appellant during spring break in 2001. 
Appellant was living with his sister, Patricia Ann Crain.  K.W. arrived on Saturday and planned to
spend the whole week.  However,
appellant=s behavior after coming in from a party on
Saturday night caused K.W. to leave early. 
K.W. testified that, after she and her younger sister went to sleep on
adjacent couches in the living room, she was awakened at about 3:00 a.m. by
appellant.  He was touching her breast,
over her clothes, with his hand.  K.W.
testified that appellant was lying where her younger sister had been sleeping
and that appellant had moved K.W.=s younger sister to another couch. 
When appellant touched K.W.=s breast, it scared her.  K.W.
jumped up but then lay back down. 
Appellant then reached his hand over again, and K.W. jumped up and went
to the restroom.  When she came out of
the restroom, she noticed that appellant was not wearing any clothes but was
trying to cover himself with a blanket. 
Appellant asked K.W. if she wanted to watch television.  K.W. answered negatively and then went to
her Aunt Patricia=s room
where she slept for the rest of the night. 
The next day, K.W. called her mother and asked her to come pick her up
and take her home.  K.W. was
crying.  

K.W.=s mother, K.W.=s stepfather, and T.W. all asked K.W. what was wrong, but all she told
them at the time was that appellant Awas playing too much.@  That evening after they
returned home, K.W.=s
mother and stepfather called her into their room to discuss things.  K.W. told them what had happened.  Her mother ultimately called the
police.  Subsequently, while K.W. was
going through counseling, K.W. told her counselor that she had seen appellant
in sexual encounters with T.W.  








K.W.
testified at trial that, one time when her younger sister opened the door to
appellant=s bedroom, she saw T.W. Aover [appellant=s] face.@  They
were on the bed, and T.W. did not have on any pants or panties.  On another occasion, appellant had sent
K.W., her brother, and her younger sister outside, which he did often, keeping
T.W. inside with him.  While she was
outside, K.W. saw appellant and T.W. through the window.  T.W. was sitting on the couch; appellant was
on his knees on the floor situated between her legs and facing her.  Appellant=s hands were on T.W.=s thighs, and K.W. saw him Apush up@ from his waist.  

T.W. also
testified about her encounters with appellant. 
The first time something happened between them, T.W. was 11 years
old.  While she was asleep, appellant
reached under the blanket and touched her breasts.  Appellant did that on more than one occasion.  Appellant then progressed to Agoing under [her] shirt@ and, eventually, to having sex with
her.  T.W. recalled that she was 12
years old the first time appellant penetrated her.  T.W.=s
mother was at work.  Appellant sent the
younger children outside and took T.W. into his bedroom.  Appellant put T.W. on the bed and told her
that he was going to have sex with her and that she should not tell
anybody.  Appellant took off T.W.=s gown, took off his clothes, pulled T.W.=s underwear aside, and had sex with her by
placing his penis into her vagina.  T.W.=s statement indicated that the pain was Aexcruciating,@ that she had a blood stain in her underwear, and that it hurt to
walk.  According to T.W., appellant
sexually assaulted her many times.  T.W.
also testified that appellant Aperformed oral sex on [her]@ and that, when she was 13 or 14 years old, appellant placed his penis
in her mouth.  T.W. recalled one
occasion in particular when she told appellant Ano@ and tried to walk out of the house.  Appellant slammed her hand in the door and
then hit her in the face.  T.W.
attempted to fight back.  

When she
was 13 years old, T.W. contracted a sexually transmitted disease from her
father.  However, because she was afraid
to tell anyone that appellant was molesting her and because appellant was at
the hospital with her and her mother, T.W. said that some boy had given her the
disease.  T.W. testified that appellant
was the only person during that time with whom she had Ahad sex.@  Even after K.W. came forward
and told about appellant=s behavior, T.W. denied that anything had happened between her and
appellant.  Eventually, however, she
made an outcry to her mother but did not tell her mother everything because her
mother started crying.  








The
victims= mother testified at trial.  She testified regarding K.W.=s outcry, which was substantially similar to
K.W.=s testimony at trial.  The victims= mother also testified that T.W. subsequently admitted the abuse -- but
only after being confronted with the fact that K.W. had reported to her
therapist that K.W. had seen appellant abusing T.W.  Detective Patricia SanMartino testified regarding T.W.=s outcry.  


Joanna
Elaine Bass Parker testified that she had observed appellant behaving
inappropriately with T.W. when T.W. was about ten years old.  Parker worked with appellant and the victims= mother. 
Parker saw appellant leaning over in the car kissing T.W.=s neck. 
Parker also noticed that, while T.W. was outside playing, appellant
would grab her or hug her from behind and that his hands Awould always land either on her upper private
part@ or Abelow her belly button@ in her Aprivate area.@  

Appellant=s sister, Patricia, testified and
corroborated K.W.=s
testimony as far as coming to visit for spring break, leaving early, and coming
into Patricia=s bedroom to sleep.  However, Patricia did not think that K.W. was acting
strangely.  Appellant testified and
denied the allegations made against him. 
Appellant testified that K.W. and T.W. were accusing him of  Asexual abuse to get [their younger sister] back.@  

We hold
that the evidence is factually sufficient to support appellant=s conviction of each offense.  The evidence supporting appellant=s guilt is neither so weak nor so greatly
outweighed by contrary evidence as to render any of the convictions clearly
wrong and manifestly unjust.  Appellant=s sole point of error is overruled.  

The
judgments of the trial court are affirmed. 


 

PER
CURIAM

 

July 24, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b). 

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.